[L. A. No. 2881. Department One.—June 12, 1912.]

J. M. SEWELL, Plaintiff and Respondent, v. R. R. CHRISTIE and W. R. PRICE, Defendants and Appellants, and H. C. MARSH, Defendant and Respondent.

FALSE REPRESENTATIONS — SALE OF MINING STOCK — FINDINGS — EVIDENCE.—In an action against two defendants to recover damages for fraudulent representations in the matter of the sale of shares of stock of a mining corporation, which representations were made in letters and telegrams sent by one of the defendants to the plaintiff, the evidence is reviewed and held insufficient to support the findings to the effect that the other defendant joined or aided in the mailing or sending of such communications, or in making any of the representations contained therein, or that he knew that any statement made by him to his codefendant in regard to any of such matters was false or without any foundation in fact, or that he made any statement either to the plaintiff or to his codefendant in such matters for the purpose of misleading or deceiving the plaintiff, or that he made any statement to his codefendant, not believing them to be true, but believing them to be false, and with the intent to deceive.

APPEALS from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

Hatch & Lloyd, Davis, Kemp & Post, and H. M. Barstow, for Appellant W. R. Price.

S. G. Barker, and Roland G. Swaffield, for Defendant and Appellant R. R. Christie.

Hannon & McCormick, and Wm. J. Variel, for Plaintiff and Respondent.

F. A. Knight, for Defendant and Respondent H. C. Marsh.

ANGELLOTTI, J.—In an action to recover damages for fraudulent misrepresentations in the matter of the sale of seven thousand shares of stock of the National Gold Dredging Company, plaintiff had judgment against defendants

Christie and Price for seven thousand dollars, a nonsuit having been granted as to defendant Marsh. Both defendants gave notice of intention to move for a new trial, but the bill of exceptions appears to be a bill on behalf of Price only. Christie appealed from the judgment, but has filed no brief in this court and did not appear at the calling of the case for oral argument. It will therefore be unnecessary to consider his appeal. Defendant Price appeals from the judgment and from an order denying his motion for a new trial.

Substantially the complaint alleged as follows: Plaintiff was a resident of the city of Independence, state of Missouri, and the defendants were residents of the city of Long Beach, California. Plaintiff was a cousin of Christie, and relied absolutely on the statements and representations made to him by Christie and Price. Early in April, 1908, plaintiff was at Long Beach and Christie and Price stated to him that they, Marsh and one Dubois were large holders of the National Gold Dredging Company, a corporation organized for the purpose of placer mining by extracting placer gold from the sands and gravels of beds of rivers by means of a suction dredger; that the company owned certain mining grounds for such purposes, viz., eleven miles in length of the American River, and had there one of said dredgers and appliances; that the work of mining there had been in operation for two weeks; that Price had had the gravels and sands of the river tested with drilling appliances, and had ascertained that said territory was rich in placer gold; and that they thought so well of it that they were endeavoring to purchase an additional block of stock. Plaintiff within a few days returned to his home in Missouri. The defendants, knowing of the reliance by plaintiff on said statements and that he specially relied on Christie, conspired to cheat and defraud him by persuading him to purchase a large block of stock upon which they jointly had an option to purchase, and in pursuance of such conspiracy sent to him certain letters and telegrams signed by Christie alone. In one of these letters, sent April 27, 1908, it was stated: "The dredger has commenced operations and the stock jumped to $1.25, and the next day was taken off the market. I think it will be worth from $2.00 to perhaps $5.00 in 60 days. Mr. Dubois says he can sell our 11 miles of the river to Portland parties for one million but it is not for

sale." A telegram was sent on May 1, 1908, saying: "Dredger grounds prove fabulously rich stock worth three dollars. I believe will be ten will save five to ten thousand shares for you if you wire have sent money in forty-eight hours." On May 5, 1908, a letter was sent saying: "As I told you three of us are now interested in the option of the 50,000 shares of the dredger stock. The first offer we had was $550,000 for our ground, the next was one million and Mr. Dubois wrote last week and said he had just returned from the dredger where he met some mining men that wanted to pay us two and one half million for the property." On May 5, 1908, a telegram was sent saying: "How much dredger stock do you want at $1.00 worth $5.00." On May 6, 1908, a telegram was sent, saying: "Must send money tomorrow. Option only good to you." Plaintiff believed all these representations, and relying on them purchased from the defendants seven thousand shares of said stock, paying seven thousand dollars therefor on May 8, 1908. He received stock that was owned by Price therefor. The representations were each and all untrue, and were known by each of the defendants to be false, and were made by said defendants to plaintiff for the purpose of inducing him to purchase the stock. He would not have purchased but for such representations. He had no opportunity of knowing and did not know of the falsity of such representations until about January 20, 1909, and on February 3, 1909, rescinded such purchase, notifying defendants in writing that he rescinded and tendering them the stock, which they refused to accept, and demanding the return of his money. He has been damaged in the sum of seven thousand dollars.

Defendant Price by his answer denied the allegations of conspiracy in the making of the representations, or that he knew that said statements, if they had been made, were false or untrue or without any foundation whatever. He also set up the defense of failure on the part of plaintiff to rescind after he had full notice of all the facts, until the stock had become valueless by reason of the destruction of the dredger of the company by a great and unusual flood.

The trial court found as follows: The company was engaged in an attempt at gold placer mining on the territory mentioned, and for such purpose held ten mining locations under

the mining laws applicable thereto, and an adjoining mining location known as the Cache Rock claim, under option to purchase for the sum of five thousand dollars, said claims occupying about eleven miles in length of the American River. It had constructed on Cache Rock claim, a suction dredger for the purpose of extracting gold, and had commenced operating the same on or about April, 1908, and continued this work until about February, 1909, when by reason of a heavy storm, the dredger was carried away and destroyed. During all of said time, only about one-half ounce of gold was extracted from said claims. In all other respects the representations alleged were found to be untrue. It was found that the representations alleged were all made by Christie and Price in the manner alleged, i. e., by Christie and Price orally as to those so alleged, and that Christie and Price sent to plaintiff the letters and telegrams containing the other statements. · There was no finding of any conspiracy or joint intent on the part of Christie and Price to cheat or defraud plaintiff. It was found that they made the representations and sent the letters and telegrams for the purpose of inducing and persuading plaintiff to purchase a portion of the stock which Price had an option to purchase. It was found that Price knew all of said false representations to be false and untrue. It was found that Christie had no intent to deceive plaintiff, but that the statements made by him were made in a positive manner not warranted by such information as he had. It was further found that Christie relied wholly upon information received by him from Price, and that Price gave such information to Christie, with the intent that the same should be by him communicated to plaintiff, and that such representations were made by Christie to plaintiff with the knowledge of Price and with the intent on his part that plaintiff should be misled thereby and induced to purchase the stock, and that plaintiff did not know that any of Christie's statements were based on information received by him from Price or any one else  The stock never had any market value in excess of one dollar per share, and was valueless at the time of the attempted rescission. All the other allegations of the complaint were found to be true.

The findings establish it as a fact, for all the purposes of this appeal, that there was no conspiracy or joint intent on

the part of Christie and Price to cheat or defraud plaintiff. It is substantially found that Christie fully believed not only at the time of the purchase of the stock by plaintiff, but for a long time thereafter, that the enterprise was all he represented it to be, and that the stock would measure up in value to the various standards he set for it. The evidence, as the same is set forth in the record, clearly shows this to have been the situation. He was held liable notwithstanding his belief in the truth of his representations to plaintiff, solely on the ground that his representations were made in a positive manner not warranted by the information he had. (Civ. Code, sec. 1572, subd. 2.)

It is demonstrated by the record that the only representations influencing plaintiff in the matter of the purchase of this stock were such as were contained in the letters and telegrams sent to him by his relative, Christie. It appears that plaintiff had become interested in the enterprise on his visit to California, by reason of the enthusiasm of his relative and his desire to invest to advantage, and had requested that Christie keep him informed as to any development in the matter. Both Christie and Price, with defendant Marsh, were anxious to acquire fifty thousand shares of stock from Dubois in addition to the stock they already had, and as to these Price had an option in which Christie and Marsh were equally interested with him, the understanding being that each should have one-third. Both because he considered it a good thing and was anxious to obtain the money wherewith to pay his portion of the purchase price and thus be allowed to obtain a portion of the stock covered by the option, and because he was willing to have his relative Sewell share in the profits if he would take some of the stock, he sought his participation. There is absolutely nothing to indicate that Price was not just as great a believer as Christie in the enterprise. Coming to a consideration of the letters and telegrams containing the alleged representations: There is nothing to warrant a conclusion that Price was in any way a party to the sending of any of the letters, or counseled or advised in the matter of their being sent. The first one, that dated April 27th, was devoted principally to the matter of plaintiff taking some stock in an asbestos concern, and what was said as to the dredging proposition was said after discussing the matter

apparently prompting the letter. The important parts of this were "Now, in regard to the dredging proposition, will say that it is getting exciting—the dredger has commenced operation and the stock jumped to 1.25 and the next day was taken off the market. I think it will be worth 2.00 and perhaps 5.00 in 60 days. Mr. De bois says he can sell our 11 miles on the river to Portland parties, for 1,000,000, but it is not for sale." The statement as to the dredger was true. There is nothing to show that Price was responsible for any of the other statements of fact above set forth except that he told Christie that "Mr Edwards had received word from the north not to sell any stock for less than 1.25, and the next day they notified him not to sell any more at any price." and also showed him a letter from Dubois in which the latter said that he had not the least doubt but that the property could be sold for one million dollars. The Dubois letter was introduced in evidence. Mr. Edwards corroborated the statement as to the receipt of the letter from the north, either from Auburn or Forest Hill, saying: "Received wire from Guy Dubois this A. M. Stock jumped to 1.25 and taken off the market. Close deal with Redlands party and return balance of stock to me as soon as possible." This evidence was in no way contradicted. The remainder of the portion quoted above was simply an expression of Christie's personal opinion as to the probable value of the shares in the future. Certainly there is nothing in all this to render Price in any degree responsible to plaintiff. The only material statement in the letter of May 1st was as to offers for the property, and this was clearly based by Christie on the letter from Dubois already referred to, which he had read. The only material statement in the letter of May 5th is one that "the stock has gone out of sight," with the further statement that he, Christie, would not take five dollars for his dredger stock, but that he would try to save plaintiff five thousand shares if his money was sent in time. As to all these letters, no connection on the part of Price is shown, nor is there ground for any reasonable inference that they were induced by anything Price may have said to Christie, with the intent that he should communicate the same to plaintiff, or that Price did not fully believe that such statements as he did make to Christie were true. As to the telegrams, the only ones which may be

claimed to contain representations of fact are those of May 1st and May 5th. The first of these contained the statement "Dredger grounds prove fabulously rich. Stock worth three dollars"; the second was a query as to how much dredger stock he wanted at one dollar, *"worth five."* This "worth five" was simply an expression of opinion by Christie, based on the Dubois letter which he had read. The statement that the dredger grounds prove fabulously rich and that the stock was worth three dollars was also based by Christie on the same letter. The testimony fairly read is not sufficient to support a conclusion that Price had anything to do with the sending of either of these telegrams, or even that he showed the Dubois letter to Christie or talked over the matter referred to therein, with the intent that he should communicate the same to plaintiff. The testimony is absolutely wanting in foundation for a conclusion that Price did not fully believe that everything he said to Christie in regard to the matters referred to was true.

It should be said that it appears from the adjustment statement made August 5, 1908, between Chirstie, Price, and Marsh, introduced in evidence by plaintiff, that the seven thousand shares of stock sold to plaintiff were charged to Christie's one-third of the fifty thousand shares subsequently acquired under the option, and he (Christie) was credited with the purchase price therefor, less two thousand dollars divided among the three as "profits" on the sale. According to the findings, the stock which the defendants were seeking to sell to plaintiff was a portion of this option stock, and the evidence shows that the only part played in the transaction by stock belonging to Price individually was that the same was delivered to plaintiff on the sale, as a loan from Price to Christie, pending the actual acquirement of the option stock.

From what we have said, it is apparent that our conclusion is that the findings of fact are not sufficiently supported in so far as they in effect state that Price joined or aided in the mailing or sending of any of the letters, or either of the two telegrams to which we have specially referred, viz.: those of May 1st and May 5th, or in making any of the representations contained in said letters or telegrams; or that Price knew that any statement made by him to Christie in regard

to any of such matters was false or untrue or without any foundation in fact; or that Price made any statement either to plaintiff or to Christie in such matters for the purpose of misleading or deceiving the plaintiff.

We do not see how it can be claimed that these findings are not essential to the judgment against Price. Both by the complaint and by the findings Price's liability is based wholly on his alleged complicity in the making of false representations for the purpose of inducing the purchase of the stock. That in some way he should have joined in the making of the representations is of course essential to any liability on his part. The findings to the effect that he actually participated or aided and abetted in the sending of the letters and telegrams are not sustained by the evidence. This leaves the judgment against him to depend solely on the finding that he made the statements to Christie with the intent that the same should be by Christie communicated to plaintiff. Passing all other claims made by appellant in regard to this finding, there is not sufficient evidence to support the further conclusion upon which he is in fact held liable, viz.: that he made the statements to Christie, not believing them to be true, but believing them to be false, and with the intent to deceive. It is nowhere found as to him, as it is to Christie, that he made his statements in a positive manner not warranted by his information. One or the other of these conclusions is absolutely essential to his liability.

As to the defendant Price the judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.