[L. A. No. 3119. Department One.—July 25, 1913.]

HANNAH CUSHING, Appellant, v. BUILDING ASSOCIATION OF THE SOCIETY OF THE NEW OR PRACTICAL PSYCHOLOGY, J. M. SEWELL, Individually, J. M. SEWELL, as President, and MARY E. SEWELL, as Secretary of said Corporation, Respondents.

PLEDGE OF PROPERTY FRAUDULENTLY ACQUIRED BY PLEDGOR—BONA FIDE PLEDGEE PROTECTED AS AGAINST CREDITORS OF GRANTOR OF PLEDGOR. A *bona fide* pledgee of corporate stock, which the pledgor had acquired from his immediate grantor under such circumstances as to make the transfer fraudulent and void as against the grantor's creditors, is entitled, as against such creditors who had not acquired a prior lien, to hold the stock as security for the loan for which it was pledged, and, upon default in the payment of the note evidencing the loan, to enforce the lien of the pledge against the stock. Under such circumstances, the rights of the pledgee are paramount to the rights of the fraudulent grantor's creditors.

ID.—EXECUTION SALE OF PLEDGED PROPERTY—PURCHASER ACQUIRES INTEREST OF PLEDGOR.—Where subsequent to the pledge, it was

adjudged that the stock had not belonged to the pledgor but was the property of his grantor, and the interest of the latter therein was sold under execution, the execution purchaser acquired, subject to the pledge, all of the pledgor's interest therein, and thereafter stood in the pledgor's shoes, so far as concerned any proceeding against the pledged property instituted by the pledgee, with notice of his rights.

ID.—UNAUTHORIZED SALE BY PLEDGEE—CONSENT OF PLEDGOR—SALE INEFFECTUAL AS TO EXECUTION PURCHASER.—After such execution sale, the pledgee, having notice thereof, could not sell the pledged property, except as sanctioned by the contract of pledge, without the consent of the execution purchaser. An attempted sale thereof, in contravention of the terms of the contract, although with the consent of the pledgor, was ineffectual, except in so far as the pledgor himself was concerned, and did not affect the rights of the execution purchaser.

ID.—RIGHTS OF SUCCESSOR OF PLEDGOR IN PLEDGED PROPERTY.—The execution purchaser, as the successor of the pledgor, acquired no right in regard to the pledged property other than the right to receive it from the pledgee upon paying the debt for which it was pledged, or in the event of a legal sale thereof by the pledgee to enforce the lien of the pledge, to receive any surplus over the amount necessary to satisfy the debt.

ID.—EFFECT OF UNAUTHORIZED SALE BY PLEDGEE ON RIGHTS OF SUCCESSOR OF PLEDGOR.—The attempted unauthorized sale of the pledged property by the pledgee to herself, with the consent of the pledgor, and the surrender of the note secured to the pledgor, did not destroy the lien of the pledge, or enlarge the rights of such execution purchaser in regard to the property.

ID.—SALE BY PLEDGEE TO HIMSELF—SUCCESSOR OF PLEDGOR CANNOT TREAT SALE AS INEFFECTUAL AND TAKE PROPERTY WITHOUT REDEMPTION.—Where the attempted unauthorized sale by the pledgee was to himself, the pledgor or his successor in interest may, at his option, insist that the sale is ineffectual for any purpose, and that the pledgee still holding the property holds it solely as pledgee, bound to deliver it up upon the actual payment to him of the amount of the debt for which it was pledged. Such successor has no right, in exercising his right to treat the sale as ineffectual, to insist either that the debt satisfied in no other way than by such attempted purchase has in fact been satisfied, or that he may take the property without paying such debt.

ID.—MOTIVES OF PLEDGEE IN MAKING SALE IMMATERIAL.—Under such circumstances, the motives of the pledgee in attempting to make the unauthorized sale to himself are immaterial to the rights of the successor of the pledgor.

Id.—Surrender of Secured Note to Pledgor—Debt not Satisfied as to Successor of Pledgor.—The facts that at the time of such attempted sale there was an understanding between the pledgor and the pledgee that the obligation was thereby discharged, and the note secured was thereupon surrendered to the pledgor as paid, did not so affect the rights of the successor of the pledgor as to authorize him to treat the sale as ineffectual to transfer the pledged property to the pledgee, and as effectual to satisfy the debt.

Id.—Redemption by Successor of Pledgor—Surrender of Secured Obligation—Assignment of Obligation.—The purchaser at execution sale of the pledged property subject to the lien of the pledge, did not acquire the personal obligation of the pledgor to the pledgee, and the surrender of such obligation to the purchaser was not essential to the protection of his rights upon his redemption of the property, nor was he entitled to insist upon the assignment of such obligation by the pledgee as a condition of his redemption of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

John E. Daly, and James H. Daly, for Appellant.

F. A. Knight, for Respondents.

ANGELLOTTI, J.—The material facts shown by the findings of the trial court, the appeal being on the judgment-roll, are substantially as follows:

On March 1, 1910, plaintiff loaned four thousand dollars to one Clinton Johnson, he giving to her his note therefor, dated March 1, 1910, payable twelve months after date, with interest at eight per cent per annum.   The note stated that such interest had been paid to maturity, March 1, 1911.   The note was accompanied by a written contract of pledge of certificate No. 175 for five hundred shares of the capital stock of the corporation defendant, whose name has since been changed to "California Business Block Company," and this certificate was delivered by Johnson to plaintiff with the note and contract of pledge, as collateral security for the payment of the note.   The contract recited that Johnson was the sole owner of said stock, and that the par value of such stock was ten

dollars per share. It provided that in the event of deterioration in the market value of said stock, which was then ten dollars per share, Johnson would on notice reduce the amount of debt or increase the security in proportion to such deterioration, in default of which the note was at once to be considered due and payable. It was provided that in case of the nonpayment of the note when due, plaintiff might sell the whole or any part of the stock, without notice to Johnson, either at public or private sale.

Johnson had acquired this stock and other stock in the same corporation from one W. R. Price. Subsequent to the giving of this note and the pledging of this stock to plaintiff by Johnson, J. M. Sewell, a judgment creditor of Price, brought an action against Johnson and Price to have the conveyance declared void as one made by Price to defraud his creditors generally, and particularly Sewell. Plaintiff was not a party to that action. On December 12, 1910, judgment was given in such action in favor of Sewell. On December 21, 1910, Price's interest in the stock was attempted to be sold under execution issued in the case of Sewell *v.* Christie, Price et al., in which case Sewell had recovered a money judgment against Price, and Sewell became the purchaser at such sale. At the time of such purchase, Sewell had full knowledge and notice that five hundred shares of the stock purchased by him had been pledged to plaintiff by Johnson to secure the loan of four thousand dollars. It is not claimed that plaintiff had any notice that the transfer of the stock by Price to Johnson was fraudulent at the time she made the loan to Johnson and accepted the stock in pledge, or until the entry of judgment in the case of Sewell *v.* Johnson and Price. She was then notified of the judgment, and prior to December 26, 1910, was fully informed as to all the claims of Sewell in regard to said stock.

There was no deterioration in value of said stock or depreciation in the market value thereof from the time it was pledged "until many months after the commencement of this action," which was on March 6, 1911. This we think is clearly the effect of the findings. Therefore, the sole condition upon which the note might be treated as due before its maturity, March 1, 1911, never occurred. Nevertheless, subsequent to Sewell's purchase at the execution sale, and between December 26, 1910, and January 4, 1911, it was arranged between

Johnson and plaintiff that plaintiff might at once sell the stock to satisfy Johnson's obligation to her, provided she sold it for enough to fully pay the note. Johnson authorized her to become purchaser at such sale. Thereupon plaintiff, without any notice to Sewell, on January 4, 1911, sold the stock at private sale to herself, for four thousand dollars, the amount due on the note, and surrendered the four thousand dollar note to Johnson as paid. The note was never in fact paid except as the same was paid by such attempted sale of such stock. Sewell was not given notice of the intended sale.

It was found that the sale without notice to Sewell was the result of a conspiracy between plaintiff, Johnson, and Price to put the stock into the name of plaintiff, so that she might use it at a stockholders' meeting in favor of Price, to prevent his board of directors from being ousted from the control of the corporation by the Sewell faction, said five hundred shares being essential to give the Sewell faction the two-thirds of the stock essential to such ouster. It was further found that plaintiff and Johnson so agreed to the sale and the satisfaction of the note, for the purpose of preventing Sewell from taking up said note at maturity and collecting it from Johnson.

On January 6, 1911, plaintiff presented the certificate for the five hundred shares to the then president and secretary of the corporation, requesting them to acknowledge the transfer thereof to her upon the books of the corporation, and to issue in lieu thereof to her a new certificate for five hundred shares. This they refused to do.

On January 10, 1911, plaintiff offered to Sewell the privilege of receiving from her said certificate upon payment to her of said four thousand dollars, within a reasonable time, but Sewell refused to pay her any money therefor and claims to be the absolute owner of the stock.

This action is one by plaintiff against Sewell, as an individual, and against the corporation and its president and secretary, who are said Sewell and one Mary E. Sewell, to obtain a decree adjudging the rights of plaintiff and Sewell in regard to said stock; requiring Sewell, in the event that he desires to redeem the stock, to make such redemption within such reasonable time as may be fixed by the court; requiring the corporation and its officers in the event that no redemption is made within the specified time to transfer the stock to her on the

books of the corporation and to issue a new certificate of stock to her, and awarding her four thousand dollars against the corporation in the event that the stock cannot be issued to her. In her complaint plaintiff renewed her offer to transfer to Sewell the stock upon the payment to her by him of four thousand dollars.

The trial court adjudged upon the facts we have set forth, that the pretended sale by the pledgee was fraudulent and void; that Sewell is not required to make any redemption of the shares of stock; that plaintiff is not the owner of said stock; "that the said stock is owned by the defendant, J. M. Sewell"; that the officers of said corporation are not required to transfer said stock on the books to plaintiff or to issue her a new certificate of stock; and that plaintiff is not entitled to judgment against any of the defendants.

The effect of the judgment clearly is to deprive plaintiff of all rights, including those of a pledgee, in regard to the stock, and to make Sewell the absolute owner thereof, free of all claim on the part of plaintiff.

Plaintiff not having any notice at the time of the loan to Johnson that he had acquired the stock from Price under such circumstances as to make the transfer fraudulent and void as against Price's creditors, it is admitted that she was entitled, as against Sewell and other creditors who had not acquired a prior lien, to hold the stock pledged to her as security for the loan, and, upon default in the payment of the note, to enforce her lien as pledgee against the same. Her rights as pledgee were paramount to the rights of the fraudulent grantor's creditors.

But under the terms of the contract of pledge, she had no right to sell the pledged property before the maturity of the note, except in the contingency stated in the contract of pledge, and this had not occurred at the time of the attempted sale and did not occur until many months after the commencement of the action. The attempted sale was therefore premature and unauthorized, unless the consent of Johnson thereto was sufficient to authorize the same. But in the mean time it had been adjudged that as to the creditors of Price, Johnson was not in fact the owner of the stock but that the same was the property of Price, and Sewell had purchased on execution sale the interest of Price therein, and of all this plaintiff had full

notice. The effect of this, as we look at it, was as though Sewell had acquired, subject to the pledge, all of the pledgor's interest in the pledged property, and thereafter, so far as any proceeding by plaintiff (who had full notice of his rights) against the pledged property was concerned, stood in the pledgor's shoes. He was bound by the terms of the contract of pledge, but he was likewise entitled to rest on the. terms of that contract, and plaintiff, having full knowledge of his rights, could not sell the property except as sanctioned by the contract, without his consent. So far as any enforcement of the lien of the pledge was concerned, he had succeeded to the place of her pledgor, Johnson. We are of the opinion, therefore, that Johnson's consent was not effectual to authorize the attempted sale by her before the maturity of the note, except in so far as he himself was concerned, and that Sewell's rights remained absolutely unaffected by such attempted sale.

But we cannot see that Sewell, as the successor of the pledgor, had any right in regard to this property other than the right to receive it from plaintiff upon paying to her the debt for which it was pledged, or in the event of a legal sale thereof by her to enforce the lien of the pledge, to receive from her any surplus over the amount necessary to satisfy the debt. This right on the part of Sewell has apparently always been conceded by plaintiff, who has offered to deliver the property to him upon payment of the four thousand dollars due on the Johnson note at the time of the attempted sale. Counsel for Sewell does not claim that he would have any greater right had it not been for the attempted sale thereof under the circumstances stated, and the surrender of the note as paid to Johnson.

We do not see that either of these matters can be held to have added to Sewell's rights in regard to the property. The mere fact that plaintiff attempted as pledgee to make an unauthorized sale of the pledged property could not destroy the lien of the pledge. If there be an unauthorized sale and a delivery of the pledged property to a third party, it is well established in this state that the purchaser at least acquires the rights of the original pledgee, and that the debtor or his successor may not take the property from such purchaser without discharging or offering to discharge the original obligation. (See *Brittain* v. *Oakland Bank of Savings,* 124 Cal.

282, [71 Am. St. Rep. 58, 57 Pac. 84]; *William* v. *Ashe,* 111 Cal. 180, [43 Pac. 595], and cases there cited. See, also, Jones on Pledges and Collateral Securities, sec. 748.) Discharge of the original obligation is essential to the extinguishment of the lien of the pledge possessed by the party who is in possession of the property under the pledgor. The pledgor or his successor may not treat the sale by the pledgee as ineffectual to absolutely transfer the pledged property and at the same time treat it as effectual to the extent of extinguishing the obligation for which the property was held in pledge. The same rule must necessarily apply where the attempted unauthorized sale by the pledgee was to himself. The pledgor or his successor may, at his option, insist that the sale is ineffectual for any purpose, and that the pledgee still holding the property holds it solely as pledgee, bound to deliver it up upon the actual payment to him of the amount of the debt for which it was pledged. (See Jones on Pledges and Collateral Securities, sec. 635.) Where, as here, the pledgee so purchasing still practically has the property in his possession and under his control, with the result that he is in a position to deliver the same to the successor of the pledgor upon the actual discharge of the obligation, it is clear that such successor, exercising his right to treat the sale as ineffectual, has no right to insist either that the debt satisfied in no other way than by such attempted purchase has in fact been satisfied, or that he may take the property without paying such debt.

We do not see that the alleged motive and "conspiracy" of plaintiff, Johnson, and Price in the matter of such attempted pledgee's sale are at all material under the circumstances. Notwithstanding these matters, Sewell's rights in regard to the pledged property are fully protected by the rules we have set forth, and there is no law that we know of that warrants the imposition upon the plaintiff of the penalty of forfeiting her pledgee's lien simply because of acts which in no degree affect any of such rights.

Nor do we see that the understanding between Johnson and plaintiff that the obligation was discharged by such attempted sale, and the surrender of the note by plaintiff to Johnson as paid thereby, affect the questions we are considering, in so far as Sewell's rights are concerned. Notwithstanding such understanding between plaintiff and Johnson, the debt was not

in fact paid unless the sale of the pledged property by the pledgee herself was valid, and, as we have seen, Sewell cannot at the same time insist that the sale was ineffectual to transfer the pledged property to the pledgee, and that it was effectual to satisfy the debt. We are not sure that we fully understand the claim of counsel for Sewell as to the effect on Sewell's rights of the surrender of the note by plaintiff to Johnson. We do not see that the delivery of such note to Sewell upon his redemption of the pledged property, is in any degree essential to the protection of any right possessed by Sewell in the matter. All that he can properly claim in so far as plaintiff is concerned is that he is the absolute owner of the pledged property subject to the plaintiff's lien as pledgee. He acquired no other or greater right by reason of his purchase at the sale under the execution issued in Sewell v. Christie et al. Upon acquiring the stock free of the lien of the pledgee by the payment of the amount secured thereby, he will obtain all that he so purchased. He did not purchase Johnson's personal obligation to plaintiff, the acquirement of the same would in no degree protect any of his rights in relation to the stock, and he was not entitled to insist upon the assignment of the note to him by plaintiff as a condition to his redemption of the pledged property. We know of no rule of law that gives to one purchasing simply the interest of his judgment debtor in property pledged for the personal obligation of such debtor to another, the right, by reason of such purchase, to enforce such obligation against the debtor upon the redemption by him of the property pledged. If Sewell has any right of action against Johnson for damages by reason of his participation with Price in the fraudulent transfer and the subsequent pledge of the property to plaintiff, as to which we are not to be understood as expressing any opinion, it is a matter in no way connected with or founded upon the personal obligation of Johnson to plaintiff, and any assignment of such obligation to him is in no way essential to any action by him on account thereof.

From what we have said it is apparent that the judgment is erroneous in so far as it deprives plaintiff of her right as a pledgee. We have treated the case upon the theory that the judgment in Sewell v. Christie, Price et al., upon which in so far as it is against Price, all of Sewell's rights as a judgment

creditor depend, and which was the basis for the issuance of the execution under which Sewell purchased the stock, is a valid, subsisting judgment. As a matter of fact such judgment has been reversed as to defendant Price (*Sewell* v. *Christie et al.,* 163 Cal. 76, [124 Pac. 713]). This is admitted in the briefs of counsel here, but it is claimed that, in the absence of anything in the record in this case to show such reversal or to show that the judgment so reversed was the one referred to in the pleadings in this action, we cannot take notice of the fact of reversal. It has so been held in a department decision (*Sewell* v. *Price,* 164 Cal. 265, [128 Pac. 701]), but the question is involved in a case now submitted for decision to the court in Bank, viz.: *Sewell* v. *Johnson, post,* p. 762, [134 Pac. 704], the very action in which the transfer of this stock by Price to Johnson was adjudged by the superior court to be void for the reason that it was in fraud of Price's creditors. We mention these facts not for the purpose of discussing the question, but solely for the purpose of showing that in the exercise of our discretion in the disposition of this appeal, instead of merely modifying the judgment or reversing it with directions to enter a different judgment which would be supported by the findings of fact, we should reverse it with directions for a new trial, so that the respective rights of the parties may be determined in view of the facts as they really are.

The judgment is reversed and the cause remanded for a new trial.

Shaw, J., and Sloss, J., concurred.