T.C. Summary Opinion 2005-4

UNITED STATES TAX COURT

RONALD C. SINGERMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11227-03S.          Filed January 5, 2005.

Ronald C. Singerman, pro se.

Lorraine Wu, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  The decision
to be entered is not reviewable by any other court, and this
opinion should not be cited as authority.  Unless otherwise
indicated, all subsequent section references are to the Internal
Revenue Code in effect at relevant times, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax for 2000 in the amount of $13,801. The sole issue for decision is whether petitioner is entitled to a theft loss deduction under section 165(a) of $202,830 with respect to his investment in the stock of Ampex Corp. (Ampex).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided at Culver City, California.

Petitioner is a certified public accountant. Since 1981, his practice has involved financial audits of publicly held corporations, income tax return preparation for individuals and business entities, and tax audit representation.

In October 1999, petitioner received a positive recommendation on Ampex from a securities broker. Ampex is a publicly traded corporation, and during the period in question it was listed on the American Stock Exchange under the symbol "AXC".[1] Ampex is a provider of technologies for the acquisition, storage, and processing of visual information. During 1999, a

---

[1] Ampex's Class A common shares were traded on the American Stock Exchange from Jan. 16, 1996, until Nov. 21, 2003, when Ampex was delisted for failure to meet the minimum stockholders' equity requirement. Subsequently, its Class A common shares were listed for quotation on the OTC Bulletin Board, an interdealer, over-the-counter market.

significant portion of Ampex's business was dedicated to developing Internet video programming and technology, often through its wholly owned subsidiary, iNEXTV.

Petitioner decided to invest in Ampex common stock after reviewing its public disclosures, including recent financial statements and a number of press releases issued by the company. From November 29, 1999, to December 7, 2000, petitioner purchased 60,000 shares of Ampex common stock through his brokerage account with TD Waterhouse, as follows:

| Trade Date | No. of Shares | Price Per Share | Total Cost (including commissions and fees) |
|---|---|---|---|
| 11/29/99 | 3,000 | $4.6875 | $14,107.50 |
| 12/03/99 | 3,000 | 4.5625 | 13,722.50 |
| 12/08/99 | 2,000 | 5.3750 | 10,795.00 |
| 12/08/99 | 2,000 | 5.2500 | 10,535.00 |
| 12/10/99 | 2,000 | 6.0625 | 12,137.00 |
| 12/10/99 | 6,000 | 6.0625 | 36,435.00 |
| 12/10/99 | 2,000 | 6.0000 | 12,035.00 |
| 12/10/99 | 2,000 | 6.0000 | 12,035.00 |
| 12/13/99 | 3,000 | 6.0000 | 18,012.00 |
| 12/13/99 | 1,000 | 5.9375 | 5,972.50 |
| 12/14/99 | 1,500 | 5.8750 | 8,824.50 |
| 12/14/99 | 2,500 | 5.8750 | 14,722.50 |
| 12/14/99 | 2,000 | 5.7500 | 11,535.00 |
| 12/23/99 | 2,000 | 4.9325 | 9,887.00 |
| 01/31/00 | 1,000 | 3.3750 | 3,410.00 |
| 07/28/00 | 5,000 | 1.5000 | 7,512.00 |
| 10/31/00 | 5,000 | 0.7500 | 3,765.00 |
| 12/01/00 | 5,000 | 0.5625 | 2,827.50 |
| 12/04/00 | 5,000 | 0.5000 | 2,515.00 |
| 12/07/00 | 5,000 | 0.4375 | 2,202.50 |
| Total | 60,000 | | $212,987.50 |

As provided in the above table, petitioner's overall cost basis in the Ampex stock was $212,987.50. Petitioner purchased shares at prices ranging from $0.4375 to $6.0625 per share.

Ampex's stock began to decline in December 1999, which coincides with the timing of a failed joint venture with Information Superstation, LLC (ISS).  On May 12, 1999, Ampex and ISS agreed to jointly develop Executive Branch TV (EXBTV), a video-based Internet Web site providing 24-hour coverage of the White House and executive agency activities.  By late 1999, the joint venture had ended, and the parties accused each other of wrongdoing.  In December 1999, ISS filed a lawsuit against Ampex in the Superior Court of the District of Columbia for theft of corporate opportunity and breach of fiduciary responsibility. Neither party disclosed the filing of the lawsuit until ISS announced it during a press conference on February 10, 2000.[2]  In a press release dated February 11, 2000, Ampex defended its right to continue to operate EXBTV and disclosed that it had filed a countersuit against ISS for fraud and misappropriation of funds on February 1, 2000.

In December 1999, Ampex's stock traded in a range of $4.4375 to $6.375 per share.  By the end of February 2000, the stock had declined to $3.875 per share.  At the end of December 2000, Ampex's stock was trading at $0.375 per share.

---

[2] In a U.S. Securities and Exchange Commission Form 8-K, Current Report, filed on Feb. 10, 2000, Ampex acknowledged that ISS had filed a lawsuit against the company but that it had yet to be served with a copy of the complaint.  The Form 8-K was not introduced as part of the record in this case, but the Court takes notice of this public filing.

On his Federal income tax return for taxable year 2000, petitioner reported a theft loss of $202,830 on his investment in 60,000 shares of Ampex common stock. Petitioner used the closing price of the stock at the end of 2000 to calculate a theft loss deduction in the amount of $202,830 (60,000 shares x $0.375 less a claimed cost basis of $225,330).[3]

To explain his position for claiming a theft loss deduction in 2000, petitioner attached to his 2000 return a Form 8275, Disclosure Statement, and stated that Ampex engaged in "a pattern of willful and mis-leading disclosures and non-disclosures" that constitutes theft by fraud or false pretenses against its shareholders. In particular, petitioner cited that Ampex failed to timely disclose the dissolution of its joint venture with ISS and the resulting material lawsuits. Furthermore, petitioner accused Ampex's corporate officers of continuing to mislead investors in May 2000 by making unreasonably rosy revenue projections at a meeting for institutional investors and by discussing at a shareholder's meeting in June 2000 the sale of an operating subsidiary that subsequently did not occur.

Petitioner filed complaints against Ampex with the U.S. Securities and Exchange Commission on July 24, 2001, and with the

---

[3] At trial, petitioner stipulated that his cost basis in the 60,000 shares of Ampex stock is $212,987.50 rather than the $225,330 that he used on his 2000 return. We consider the stipulated cost basis as a concession of a portion of petitioner's claimed theft loss deduction to $190,487.50 (60,000 shares x $0.375 less a cost basis of $212,987.50).

California Department of Corporations on December 20, 2001. There is no evidence that either agency conducted an investigation.

## Discussion

Generally, a taxpayer bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden may shift to the Commissioner if the taxpayer introduces credible evidence and satisfies the requirements under section 7491(a)(2) to substantiate items, maintain required records, and fully cooperate with the Commissioner's reasonable requests. Sec. 7491(a). In this case petitioner has neither argued that section 7491 is applicable to shift the burden of proof to respondent nor established that he complied with the requirements of section 7491(a)(2). The resolution of the issue presented does not depend on which party has the burden of proof. We resolve the issue on the preponderance of the evidence in the record.

Section 165(a) provides a deduction for any loss sustained during the taxable year not compensated for by insurance or otherwise. Under section 165(c), losses for individuals are limited to (1) losses incurred in a trade or business, (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, and (3) losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

Generally, a taxpayer is not entitled to a loss deduction solely on the account of a decline in the value of stock unless the stock is worthless and has no recognizable value or until the stock is sold. Sec. 165(g); sec. 1.165-4(a), Income Tax Regs. Section 165(e), however, provides that any loss arising from theft will be treated under section 165(a) as sustained during the taxable year in which the taxpayer discovers the loss.

Whether a loss constitutes a theft loss is determined by examining the law of the State where the alleged theft occurred. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973); Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956); Viehweg v. Commissioner, 90 T.C. 1248, 1253 (1988). Section 484(a) of the California Penal Code (West Supp. 2004) defines theft as follows:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property * * * is guilty of theft. * * *

To support a finding of theft by false pretense in California, section 484(a) of the California Penal Code requires intent on the part of the defrauder to obtain for himself the victim's property. People v. Ashley, 267 P.2d 271, 279 (Cal. 1954); People v. Fujita, 117 Cal. Rptr. 757, 764 (Ct. App. 1974); People v. Conlon, 24 Cal. Rptr. 219, 222 (Dist. Ct. App. 1962).

Implicit in this element is a relationship of privity between the perpetrator and the victim.  Crowell v. Commissioner, T.C. Memo. 1986-314.  In prior cases involving California Penal Code section 484, we established that a taxpayer who purchases corporate stock on the open market cannot support a claim of theft under California law because there is no privity between the alleged corporate defrauder and the taxpayer.  Marr v. Commissioner, T.C. Memo. 1995-250; Crowell v. Commissioner, supra; DeFusco v. Commissioner, T.C. Memo. 1979-230.

In the present case, petitioner purchased all of his shares of Ampex stock on the open market.  Accordingly, there is no privity between petitioner and Ampex's corporate officers for purposes of section 484 of the California Penal Code.  Thus, even assuming that petitioner can support his allegation that Ampex is guilty of criminal wrongdoing, petitioner is not entitled to a theft loss deduction under California law.[4]

Petitioner, while admitting that he was not a victim of theft under California Penal Code section 484, argues that he is entitled to a theft loss deduction based upon a cause of action against Ampex for fraud or negligent misrepresentation under California law.  Petitioner cites Small v. Fritz Cos., 65 P.3d 1255, 1257 (Cal. 2003), in which the California Supreme Court held that a shareholder has the right to sue a corporation for

---

[4] We make no finding as to whether Ampex committed any wrongdoing in this case.

fraud or negligent misrepresentation when he or she reasonably relies on the misrepresentation to hold rather than sell his or her stock.[5]

We disagree with petitioner.  A cause of action based upon a tort claim for fraud or negligent misrepresentation does not support a theft loss deduction under section 165(a).  A theft loss requires a criminal appropriation of another's property. Edwards v. Bomberg, supra at 110; Bellis v. Commissioner, 61 T.C. 354, 357 (1973), affd. 540 F.2d 448 (9th Cir. 1976); Harcinske v. Commissioner, T.C. Memo. 1984-132.  As such, a tort cause of action for fraudulent or negligent misrepresentation does not give rise to a theft loss deduction under section 165(a).  We conclude that petitioner is not entitled to the claimed theft loss deduction for 2000.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be

entered for respondent.

---

[5] California has long recognized that persons induced by misrepresentations into buying stock may sue for fraud and misrepresentation.  See Hobart v. Hobart Estate Co., 159 P.2d 958 (Cal. 1945); Sewell v. Christie, 124 P. 713 (Cal. 1912).  Small v. Fritz Cos., 65 P.3d 1255, 1257 (Cal. 2003), extended a cause of action to shareholders who refrained from selling stock because of fraud or negligent misrepresentations made by the company.