**BOYD et al. v. JOHNSTON.**

**No. 483.**

Municipal Court of Appeals for the
District of Columbia.

April 17, 1947.

Samuel Barker, of Washington, D. C.
(William R. Lichtenberg and Joseph Luria,

both of Washington, D.C., on the brief),
for appellants.

Leo N. McGuire, of Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff-appellee in February 1946 purchased a used 1940 Ford automobile from the individual defendants trading as Adams Motors. Claiming that he had offered to pay the cash O.P.A. price for the car but had been forced to pay a higher price on a time basis by financing the purchase through another company, also owned by the individual defendants, he sued for three times the overcharge. The trial court sustained plaintiff's claim, found that defendants did not act in good faith, and awarded plaintiff $484.24, plus an attorney's fee and costs. Defendants prosecute this appeal.

Maximum Price Regulation 540, dated September 6, 1945, issued under authority of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., provided in part as follows:

"Sec. 9. Evasion. It shall be a violation of this regulation to charge a price above the applicable maximum price in connection with any sale of a used car, either alone or in conjunction with any other consideration even though the price increase appears only indirectly. Specifically, but not exclusively, the seller is not permitted to require the purchaser, as a condition of the sale or transfer of the car, to make payment over a period of time; to require him to finance the purchase through any particular lending agency; * * *."

For violations of the regulations the statute, 50 U.S.C.A.Appendix, § 925(e), authorized the recovery of "such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine," but further provided that the recovery shall be the amount of the overcharge or $25, whichever is greater, if the defendant proves that "the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable pre-

cautions against the occurrence of the violation."

Plaintiff's testimony was that he visited defendants' used car lot on a Saturday and selected the automobile which he ultimately purchased. The cash sale price was $691. He offered to pay $41 as a deposit and to bring in the balance of the purchase price on the following Monday. According to his testimony, the salesman who showed him the car refused to sell it for cash and told him that the sale would have to be financed and that all of the defendants' cars were financed through the Acme Finance Company. The salesman further told him, according to plaintiff, to bring in $250 on Monday as the balance of a down payment to comply with the finance company's rules, on a 15 months' basis. Plaintiff did so and on the following Monday signed the necessary papers with the Acme Finance Company. The same salesman accepted and receipted for the additional $250 payment and handled the entire transaction for the motor company. The finance charges amounted to $188.90, including insurance premiums of $27.50. Plaintiff continued to make the monthly payments up to the date of the trial.

The salesman, called as a witness by defendants, testified that he "did not remember" any conversation with plaintiff about paying for the car in cash but did state that if a cash offer had been made he would have sold it on that basis. On direct examination he stated he had left the employment of defendants. On cross-examination he was asked whether, during the month following this transaction, he had not been discharged because he had required customers of the defendants to finance the purchase of their cars instead of paying all cash. He denied that this was a fact. No objection was made to this question or answer. In rebuttal one of the defendants was called as a witness by plaintiff and was asked, over objection of defendants, whether during a trial of a similar case a week previously he had not testified that this same salesman had been discharged because of refusing to sell cars for cash. The objection was overruled by the trial court, and the witness then ad-

mitted that he had testified to this general effect in the other case. This defendant testified further that his company had received complaints from other finance companies, and from the Morris Plan Bank, that his company was forcing used car buyers to finance their purchases. He added that "there was no reason that we should force a man to finance through the Morris Plan Bank or—we didn't get anything from the Morris Plan Bank." He stated further that his company's salesmen had been instructed to sell cars on any basis desired by the purchaser.

Defendants urge that the trial court erred in allowing the questions regarding the alleged discharge of the salesman for other violations; also that there was insufficient evidence to support the finding that the law had been violated and that there was no evidence to support the finding of "bad faith" on the part of defendants. We have concluded that each of these contentions is without merit.

■ The salesman having denied on cross-examination without objection that he had been discharged for similar transactions, the trial court was correct in admitting impeaching testimony from one of defendants. Such impeaching testimony, in fact, was probably more helpful than harmful to defendants' case. Furthermore, the willfulness of the violation was a distinct issue in the case and evidence of other similar violations was admissible as bearing on that issue.[1]

■ With respect to the finding that plaintiff had been compelled to finance the purchase through defendants' own finance company, the evidence not only supported the finding; it virtually compelled it. The salesman did not deny plaintiff's testimony that he had been refused the opportunity to buy for cash; he only said he didn't remember such conversation.

With respect to the element of so-called bad faith, the Act does not mention "bad faith" but provides that the burden of proof is on defendants to prove that a violation was "neither willful nor the result of failure to take practicable precautions

---

[1] 2 Wigmore, Evidence, 3d Ed. 1940, §§ 300, 371.

against the occurrence of the violation." Here the trial court did not use the words of the statute, but stated "I am also finding as a matter of law that there was a lack of good faith, and I find as a matter of fact that this is an ingenious device by these defendants, through their agent, to evade and to indirectly circumvent the law governing the ceiling price of this car as fixed by the O.P.A. regulations as effective of that date * * *." Here plaintiff was not only denied the right to pay cash and thus save the finance charges, but he was compelled, in order to buy the car, to finance it through the finance company owned by defendants. There was sufficient evidence to support this finding.

Affirmed.