GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,

v.

Edward B. FROELICH, Appellee.

No. 15145.

United States Court of Appeals District of Columbia Circuit.

Submitted Oct. 27, 1959.

Decided Dec. 3, 1959.

Mr. James E. Shifflette, Washington, D. C., with whom Mr. Norman E. Sill, Washington, D. C., was on the brief, submitted on the brief for appellant.

Mr. Roland D. Hartshorn, Arlington, Va., submitted on the brief for appellee.

Before FAHY, WASHINGTON and DANA-HER, Circuit Judges.

FAHY, Circuit Judge.

The questions are whether, in a jury trial for compensatory and punitive damages for the wrongful repossession of an automobile, resulting in recovery by plaintiff of $150 compensatory and $2,500 punitive damages, (1) prejudicial evidence was erroneously admitted and (2)

the case was one for the jury on the issue of punitive damages.[1]

■ (1) The question of evidence turns on the reception over defendant's objection of certain interoffice memoranda. We assume for present purposes that these memoranda were sufficiently privileged to bar their admissibility on the libel count which is no longer in the case, see note 1, supra; but no privilege attached to them on the issue of wrongful repossession. As to that issue they were relevant and material as evidence of defendant's knowledge of the status of plaintiff's transactions with defendant regarding the purchase of the automobile and as evidence also of defendant's action leading to its repossession of the automobile notwithstanding such knowledge. Since the memoranda were prepared in the offices of defendant in the regular course of its business they were competent. Being relevant, material and competent they were admissible.[2]

(2) As to the sufficiency of the evidence to take the case to the jury on the issue of punitive damages, the liability of a corporation for such damages, with its limitations, was settled in the leading case of Lake Shore & Michigan So. Ry. v. Prentice, 147 U.S. 101, 13 S.Ct. 261, 37 L.Ed. 97, and has been upheld in this jurisdiction in cases somewhat comparable to the present one in Wardman-Justice Motors, Inc. v. Petrie, 59 App.D. C. 262, 39 F.2d 512, 69 A.L.R. 648, and, by our Municipal Court of Appeals, in Jackson v. General Motors Acceptance Corp., D.C.Mun.App., 140 A.2d 699. Cf. Columbia Finance Corp. v. Worthy, D.C. Mun.App., 141 A.2d 185.

■ Wardman-Justice, like our case, also involved the wrongful seizure of an

1. The complaint included a count for libel but this is not before us. The court directed a verdict in favor of defendant on this count and no appeal was taken from the ensuing judgment.

2. Question is also raised as to the admission in evidence of an entry in a ledger of the Metropolitan Police Department in Washington with respect to the

car, indicating that it had been repossessed at a certain time and place. While the notation on the ledger included "GMAC" which by itself would not establish that this appellant had in fact picked up the car, the reference was ultimately connected up, and properly we think. At any rate, we seen no prejudice growing out of this exhibit, and none is pointed out by defendant.

automobile. It was there said, 59 App. D.C. at page 265, 39 F.2d at page 515,

> "To hold a corporation liable [for exemplary damages], it must appear that the trespass was committed by a servant acting within the scope of his employment, and that the servant's act was either authorized or ratified by officers of the corporation having authority to speak for it,"

citing Prentice. In the latter the Supreme Court held such damages were not allowable against a corporation unless it expressly or impliedly participated in the wrongful act of the agent by authorizing or approving it either before or after its commission. The plaintiff must impute to the principal that recklessness, wantonness or maliciousness which is essential to recovery of punitive over and above compensatory damages. See 147 U.S. at pages 114, 115, 13 S.Ct. at page 265. The Court also expressed the applicable principle in terms of imputing to the corporation the necessary intent; the conduct of a conductor was held not to be that of the employing railroad company, in respect of punitive damages, notwithstanding he might have been acting within the scope of his employment.

■ While the evidence in the present case leaves some doubt as to the right of plaintiff to punitive damages within the principle thus established, we think the evidence did raise an issue for the jury in that regard.[3] It is not essential in every case that an executive officer of high rank actively participate in the corporate conduct, as in Wardman-Justice. See Jackson v. General Motors Acceptance Corp., supra. A corporation such as defendant, with offices in a number of cities and engaged in widespread activities, necessarily delegates authority to its agents to be used on its behalf. If these agents in the exercise of their delegated authority, acting through regular corporate channels, engage in conduct which, except for the corporate nature of their principal, makes out a case for punitive damages, the corporation is not shielded therefrom simply by the absence of explicit authorization or ratification of the particular conduct. A contrary rule would permit punitive damages against smaller concerns, as in the Wardman-Justice case, but not against a large corporation whose size and ramifications make express authorization by the top executives of tortious acts of its working-level agents highly unlikely. The question is whether the wanton, reckless or malicious action of the agents or employees can fairly be said to be truly that of the principal.

Here the participation of the corporation's employees was not merely within the scope of their employment. It was so extensive in terms of the number of the corporation's offices and personnel, so firmly tied to the employees' specific duties, and so closely carried out through regular corporate procedures as not to permit the defendant to be absolved as matter of law of responsibility for those characteristics of the conduct which raised an issue as to punitive damages. The issue was for the jury to decide.

What occurred was as follows. The Buffalo office of defendant was advised by a private detective in Buffalo, who in turn had been advised by a Washington private detective, that the car had been on the street in Washington for several days. Defendant's witnesses testified they had previously done no business with the Washington private detective. No inquiry in Washington about the owner or his whereabouts was made, or even suggested. The Buffalo office ascertained that this particular account was carried at the office in Springfield, Missouri. The defendant's Special Collection Manager at Buffalo communicated with the Springfield office, and also advised the Washington office by telephone that the car had been picked up by the police "for narcotics" and was a "hot car." There is no evidence whatever as to any other source of this quite untrue characterization. The Springfield office communicated with its field agent,

---

3. There is no question before us as to the charge.

and a notation was made in regular course on the appropriate forms that it was understood the customer had been picked up by the narcotic authorities in Washington and that the collateral (the car) was in possession of the police. The source of this inaccuracy is not disclosed. All this information was transmitted to the Washington office, with request for immediate handling, accompanied with the suggestion that possession be obtained. The form[4] used by the Springfield office in transmitting the information showed, however, that no payments on the account were in arrears, and contained no statement that the alleged narcotics charge had been proved or that caution should be exercised by the Washington office to verify the charge before picking up the car. Its whole tenor suggested urgency and haste. The Washington office, without attempting to verify the alleged narcotics violation or to reach the plaintiff contacted the private detective Dewey, and requested that he pick up the car for defendant. The facts are that plaintiff, a member of the Presidential and Dignitary Honor Guard, had simply been out of town for a few days in connection with army service and had left the car parked where, so far as this record shows, it had a right to be.

█ While there is no reason to believe that executive officers of high rank expressly authorized this conduct, we think the facts we have outlined were sufficient to permit the court to submit to the jury the question whether there was such participation in the wanton and reckless invasion of plaintiff's rights by the defendant through its agents or employees as to render it accountable therefor in punitive damages.

█ The amount of such damages which the jury awarded, $2,500, is not so great as to require us to set it aside as grossly excessive.

Affirmed.

4. We reproduce the record of "Action Taken" set forth in the form and called for by the Company's instructions to its personnel:

"Action Taken

"Today we received a telephone call from our Buffalo, New York Branch advising they had inquiries from the Federal Narcotic Bureau as to whether or not we were interested in the the collateral carried under this contract. It is our understanding that our customer has been picked up by the narcotic authorities in Washington, D. C. The collateral is in possession of the police and the individual who has the information regarding the car is Detective F. Dewey, telephone number Hemlock 42750.

"Our outstanding balance is $264.60 and the next payment matures May 10th in the amount of $52.92. It is believed that prompt contact with Detective F. Dewey will enable us to obtain possession of the car which we would like to do before the Federal Authorities confiscate the unit.

"Please Handle Immediately."