[Civ. No. 43046. Second Dist., Div. Five. Dec. 13, 1974.]

SALLY NEUMEYER, as Executrix, etc., Plaintiff and Appellant, v. UNION BANK, Defendant and Respondent.

■

## COUNSEL

Leland, Hoffman, Kalik & Klein and N. Stanley Leland for Plaintiff and Appellant.

Loeb & Loeb and Howard I. Friedman for Defendant and Respondent.

## OPINION

**ASHBY, J.**—Plaintiff Sally Neumeyer, as executrix of the estate of A. G. Neumeyer, deceased (hereinafter Neumeyer), appeals from a judgment

in favor of defendant Union Bank (hereinafter Union) in an action for breach of contract. The case was tried without a jury and the relevant findings of fact and conclusions of law of the trial court are as follows:

Under date of October 18, 1965, Union entered into a written loan agreement with Bart and Beth Lytton, under which Union loaned the Lyttons $3,250,000 for a two-year period. The loan was secured by a pledge by the Lyttons of 325,000 shares of common stock of Lytton Financial Corporation, a pledge by various other accommodation pledgors of 9,500 additional shares of stock, and an accommodation pledge by Neumeyer of a junior note of Lytton Financial Corporation in the face amount of $500,000.

The Neumeyer pledge was reflected in a written letter agreement between Neumeyer and Union dated Octobr 11, 1965, and by a written "General Collateral Pledge Agreement" dated October 14, 1965. The latter agreement was expressly made subject to the terms and conditions of the letter agreement of October 11, 1965. The relevant provisions of the October 11, 1965, agreement are as follows:

"4. Upon any event of default in the Loan, we [Union] agree to give you [Neumeyer] written notice of said default. For a period of thirty (30) days subsequent to our written notice, you shall have an option to purchase the Loan under the terms and conditions provided for herein:

"(a) The purchase price shall be the then remaining principal balance on the Loan, with interest accrued to the date of payment;

"(b) Concurrently with your payment of the purchase price, in lawful money of the United States, we shall endorse or assign, as the case may be, without recourse to us, each and every loan document and agreement executed and taken in connection with the Loan to you.

"(c) It is understood and agreed that during this thirty (30) day option period, we shall have unlimited right and privilege to exercise any and all rights and remedies that we may have under the terms and conditions of the various loan and collateral agreements executed and taken in connection with the Loan."

The Lytton loan matured on October 17, 1967, and it was not paid in whole or part. The indebtedness was the full principal sum of $3,250,000, plus interest accruing subsequent to maturity, the interest for the 1965 to 1967 period having been paid by other means.

On March 11, 1968, Union duly notified the Lyttons and Neumeyer that the loan was in default and that a sale of collateral would be held at the offices of Union on March 20, 1968. Neumeyer attended such sale through his attorney, Mr. Leland. At no time prior to the sale or after the sale did

Neumeyer offer to purchase the loan. Prior to the sale Neumeyer, acting through Mr. Leland, advised Union that he was not then in a position to take·up the option and that he was not going to buy the loan. At the sale the 334,500 shares of the common stock of Lytton Financial Corporation were purchased by Union for $5 per share. Union then purchased the junior note pledged by Neumeyer, bidding 80 percent of the face value, or $400,000. The bids for the stock and for the note were substantially equal to the then market value of the collateral. Union purchased the collateral upon terms expressly announced at the sale, making the sale subject to Neumeyer's right to purchase the loan during the 30-day period following March 11, 1968. The proceeds of the sale were duly credited to the outstanding loan, leaving a balance owing on the loan of approximately $1,250,000.

The trial court found that it was the intention of the parties that the 30-day option of Neumeyer to purchase the loan be expressly subordinate to the right of Union to foreclose upon all collateral, including the shares of Lytton Financial Corporation stock and the note pledged by Neumeyer, and that Union did not breach its agreement with Neumeyer by failing to defer its foreclosure sale for a 30-day period following March 11, 1968. The court further found that Neumeyer suffered no damage as a result of Union's failure to defer the foreclosure sale.

## APPELLANT'S CONTENTIONS

Appellant argues that Union breached its agreement with Neumeyer when it held the sale of collateral less than 30 days after the notice of March 11, 1968, and that this breach "exonerated" the junior note pledged by Neumeyer, with the alleged result that Union owes appellant $400,000 (the fair market value of the junior note at the time of the sale) plus interest, without the necessity for appellant to prove that Neumeyer was damaged by the "breach." Appellant's argument in favor of this position makes several points, none of which has merit. Appellant argues (1) that paragraph 4(c) of the October 11, 1965, agreement, giving Union unlimited right and privilege to exercise its rights and remedies during the option period, does not mean what it says, but is ambiguous and must be construed against Union, (2) that the trial court's construction of paragraph 4(c) gave Union the power to "destroy the loan" and render meaningless Neumeyer's option to purchase the loan, (3) that appellant is in the position of a surety whose obligation is exonerated by the failure of a creditor to give notice of a debtor's default, and (4) that appellant need not prove Neumeyer was damaged by the sale prior to the expiration of the 30-day period. We reject these contentions and affirm the judgment.

## Discussion

■ The express language of the October 11, 1965, agreement is unambiguous and supports the trial court's interpretation in favor of Union. Paragraph 4 provides an option to purchase the loan "under the terms and conditions provided for herein." Paragraph 4(c) provides, "It is understood and agreed that during this thirty (30) day option period, we [Union] shall have unlimited right and privilege to exercise any and all rights and remedies that we may have under the terms and conditions of the various loan and collateral agreements executed and taken in connection with the Loan." It is appellant, not Union, who seeks a strained interpretation of this language, by arguing that "unlimited right and privilege to exercise any and all rights and remedies" refers only to rights and remedies other than sale of the collateral.[1]

Nevertheless, in accordance with the principles of *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], the trial court did receive extrinsic evidence as to the circumstances surrounding the negotiation of this provision. This evidence showed nothing which would indicate that the parties had some intention contrary to the meaning readily apparent in the language of the contract, and the trial court found that "[t]he extrinsic evidence of the negotiations of the contract confirms the intention of the parties as aforesaid and as reflected within the four corners of the October 11, 1965 instrument." The record supports the trial court's conclusion. Mr. Broidy, who negotiated on behalf of Union, testified he told Mr. Leland that Union was not eager to make this type of loan (the proceeds being used largely to consolidate other debts) and that Union wished to retain complete freedom of action as to the collateral, which supports the inference that paragraph 4(c) was intended to preserve Union's remedies during the option period. Furthermore the word "unlimited" was added to paragraph 4(c) on the second draft.

---

[1]Even if we thought this provision ambiguous, we do not accept appellant's argument that the ambiguity must necessarily be resolved against Union. The argument that Union is a large financial institution carries no weight because Neumeyer himself was a sophisticated investor, a major shareholder in First Western Financial Corporation and a governor of the Federal Home Loan Bank Board, San Francisco District, with very wide experience in the savings and loan industry. Appellant's argument that a guarantor is a "favorite of the law" likewise carries little weight because, while a surety cannot be held beyond the express terms of his contract, the agreement is to be interpreted by the same rules used in construing other types of contracts, with a view towards effectuating the purposes for which the contract was designed. (Civ. Code, § 2837; *U.S. Leasing Corp.* v. *DuPont,* 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65].)

Appellant's argument that for Union to sell the collateral would "destroy the loan" and render meaningless Neumeyer's option is erroneous. The sale of collateral was expressly made subject to Neumeyer's right to purchase the loan within 30 days. After the sale but within the 30-day period, Neumeyer could still have exercised the option, since the deficiency remained outstanding and Union's purchase of the collateral was subject to the option. Had Neumeyer exercised the option prior to the sale, the collateral would have "followed" the loan. There is evidence that after the sale Mr. Leland told Mr. Broidy in a telephone conversation that Neumeyer was not interested in buying the loan.[2]

The argument that appellant is in the position of an exonerated surety is also without merit. Appellant relies upon out-of-state cases which stand for the proposition that where a contract of guarantee specifically provides for notice of default as a condition of liability, the failure to give such notice discharges the guarantor's obligations.[3] These cases are inapposite. Civil Code section 2806 provides that a suretyship obligation is to be deemed unconditional unless its terms purport some condition precedent to the liability of the surety. The trial court found that Neumeyer's obligation was not conditional. The language of paragraph 4 does not make passage of the 30-day period a condition precedent to Neumeyer's obligation, in the event of default, to the extent of the junior notes which he pledged.

The instant agreement does not in fact provide for a 30-day notice. It provides for written notice and a 30-day option subsequent to such notice. Union in this case did provide written notice of the default, more than five days before the sale, as required by California Uniform Commercial Code section 9504, subdivision (3).

Even if it were assumed for the sake of argument that the sale of collateral was unauthorized prior to expiration of a 30-day period,[4] this would not en-

---

[2]There was conflicting evidence as to Neumeyer's intentions prior to the sale and at the sale. Broidy testified that Leland informed him Neumeyer was not in a position to exercise the option. Leland denied making any such statements until the morning of the sale. At the sale Leland indicated that Neumeyer had entered into some discussions with other people about picking up the loan but it was only a "possibility." Leland did, however, object to holding the sale before expiration of the 30-day period.

[3]*Lakemore Plaza, Inc.* v. *Shoenterprise Corp.* (1962) 91 Ohio L.Abs. 140 [22 Ohio Ops.2d 469, 188 N.E.2d 203]; *Yama* v. *Sigman* (1946) 114 Colo. 323 [165 P.2d 191]; *Bastian Bros. Co.* v. *Brown* (1940) 293 Mich. 242 [291 N.W. 644]; *Pergament* v. *Herrick Credit Corporation* (N.Y. 1960) 200 N.Y.S.2d 535; *Trenton Iron Co.* v. *Tassi* (1907) 56 Misc. 659 [107 N.Y.S. 580].

[4]That Union paid a fair price at the sale is not contested.

title appellant to recover the value of the note. Appellant would be entitled to damages for conversion, but only after deducting the amount of the indebtedness for which the property was pledged. (*Security Pacific Nat. Bank* v. *Goodman*, 24 Cal.App.3d 131, 140 [100 Cal.Rptr. 763]; *Security Inv. Co.* v. *Bieg-Hoffine Co.*, 15 Cal.App.2d 225, 227 [59 P.2d 584]; *Cushing* v. *Building Association, etc.*, 165 Cal. 731, 737-738 [134 P. 324]. See Cal. U. Com. Code, § 9507, subd. (1).) There was no showing appellant suffered any damage as a result of the sale.

To accept appellant's position would be grossly unfair to Union, which legitimately relied upon the pledge in extending the loan to the Lyttons. Union had the right to foreclose on the collateral when the loan was in default.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied January 8, 1975, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1975.