Emma WOODARD, as next friend of
Maurice Woodard, Appellant,

v.

CITY STORES COMPANY t/a Lansburgh's,
Appellee.

No. 8195.

District of Columbia Court of Appeals.

Argued Oct. 29, 1974.

Decided March 19, 1975.

Allen M. Hutter, Washington, D. C., for appellant.

William D. Appler, Washington, D. C., with whom Lawrence E. Carr, Jr., Washington, D. C., was on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

Appellant, through his mother as next friend, sued the corporate parent of a local department store for false imprisonment and assault and battery, complaining of injuries sustained when he was arrested and beaten by a store detective April 19, 1971.[1] Although compensatory and punitive damages were requested for each tort, the trial court refused to submit the issue of punitive damages to the jury. A verdict of $38 was returned for appellant from which he appeals, alleging that it was error to strike the claim for punitive damages and that hostility and bias on the part of the trial judge denied him a fair trial. We affirm.

On the day in question, appellant, a lad of 17 years, dressed in female attire—hot pants, pantyhose, and a wig—went shopping in downtown Washington with a female companion, his aunt Doris Zanders. On entering Lansburgh's Department Store, appellant asked the location of the ladies' restroom and after the two proceeded as directed to the second floor, Miss Zanders entered the restroom. There was conflicting testimony as to whether appellant also went into the restroom or remained in the entranceway and whether there were any other persons in the lavatory at the time. It is uncontradicted, how-

---

1. A third count, intentional infliction of emotional distress, was dismissed at the close of plaintiff's case.

ever, that appellant was subsequently placed under arrest by store detectives.

Appellant's testimony was that a store detective, Officer Lancelot Holder, threw him to the floor and beat and kicked him. He also said that Officer Holder, in the presence of three other persons, hit him in the face and slammed his head against a wall after he had been taken to the store's security office. A District of Columbia Metropolitan Police Officer testified that when appellant was transferred to police custody his lips were puffy and he had been bleeding from the nose. Statements from store employees contradicted those of appellant in their entirety. Officer Holder testified that appellant had resisted arrest and a scuffle ensued He said he had not noticed any cuts, abrasions, or blood on appellant. The security office secretary stated that she was present in the office at the time appellant was there and that she did not see anyone beat or hit him.

The compensatory damage award of $38 represented appellant's out-of-pocket expenses.[2] On appeal, he insists that he was entitled to have the jury consider punitive damages as well.

■ There are two prerequisites to an award of punitive damages against a corporation. Sullivan v. Yellow Cab Company, D.C.App., 212 A.2d 616, 618 (1965). First the act of the corporate employee must have been intentional, malicious, or willful. Second, the corporation through its officers or directors must have participated in the doing of the wrongful act or must have authorized or subsequently ratified the offending conduct with full knowledge of the facts. *Accord*, Dart Drug, Inc. v. Linthicum, D.C.App., 300 A.2d 442, 444 (1973) ; Safeway Stores v. Gibson, D. C.Mun.App., 118 A.2d 386, 388 (1955). As

the purpose of punitive damages is to punish the wrongdoer, deter him and others from similar conduct, and act as a substitute for personal revenge by the wronged party,[3] they are only available against the wrongdoer himself or against one to whom his motives can be imputed.

■ Here there was an intentional act as the jury verdict indicates either that the arrest was made without probable cause or with excessive force, or both. The trial court ruled, however, that appellant had made no showing of ratification or authorization of the officer's actions by appellee. Appellant's only evidence on this point went to ratification. His testimony was that there was another officer in the security office who saw Officer Holder hit him. In his opinion this officer was a supervisor because of the way he was dressed, which was not specified, and the fact that he stood behind a desk. At no time was this person identified. This evidence is patently insufficient to require the submission to the jury of the issue of ratification or to support an award of punitive damages.[4]

■ Moreover, contrary to appellant's assertions retention of an employee and subsequent promotion, standing alone, do not establish ratification by the corporation. Some additional indication of approval is needed. Dart Drug, Inc. v. Linthicum, *supra*, 300 A.2d at 444. Ratification has been present, for example, where the employee testified that his superiors were told about and approved of his actions, Safeway Stores v. Gibson, *supra*, 118 A.2d at 389; where the injured party asked for but did not receive an apology and a repudiation of employee action from the company, May Department Stores Company, Inc. v. Devercelli, D.C.App., 314

---

2. The jury was also instructed that it could award compensatory damages for loss of standing in the community and humiliation suffered, the intangible items compensable in actions for these intentional torts. Neisner Brothers, Inc. v. Ramos, D.C.App., 326 A.2d 239, 240 ·(1974).

3. Security Alum. Wind. Mfg. Corp. v. Lehman Assoc., Inc., 108 N.J.Super. 137, 260 A.2d 248, 251 (1970) ; W. Prosser, The Law of Torts § 2 at 9 (4th ed. 1971).

4. Wright v. Crown Co., D.C.App., 267 A.2d 347, 350 (1970).

A.2d 767, 770 (1973), and where an entire course of corporate conduct resulted in the wrongful repossession of an automobile, Franklin Investment Co. v. Homburg, D. C.App., 252 A.2d 95, 98–99 (1969); General Motors Acceptance Corporation v. Froelich, 106 U.S.App.D.C. 357, 359, 273 F.2d 92, 94 (1959). No such additional indication of approval is present in this case; consequently, there is a complete absence of proof that Lansburgh's ratified any tortious conduct of its employee.

■ ■ Appellant also contends that he was denied a fair trial because the trial judge showed personal bias against him. Since no objection on this point was made at trial, it is only necessary for us to review the trial court's actions under the plain error standard and inquire whether appellent has suffered prejudice affecting substantial rights. And our review is facilitated if the alleged error is considered in the light of the judicial bias standard that has developed from decisions interpreting 28 U.S.C. § 144, the federal recusation statute.[5] It appears therefrom that bias on the part of the trial judge may be grounds for a new trial where it arises from an extrajudicial source and "precludes the judge from impartially exercising his judicial responsibilities in a particular case." Tynan v. United States, 126 U. S.App.D.C. 206, 209, 376 F.2d 761, 764, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L. Ed.2d 111 (1967). In addition, the bias must be personal; that is, an affinity for or aversion to a party plaintiff or defendant or towards a party to the litigation as a member of a class. United States v. Thompson, 483 F.2d 527, 529 (3d Cir. 1973) (Adams, J., dissenting).[6]

■ ■ Appellant's complaint here is that the trial judge was biased against him be-cause he was a transvestite. He alleges that this bias was apparent in his questioning of appellant, in his instructions to the jury, and in his remarks to counsel. We first conclude from the record that questions put to appellant by the court were related to the incident which had occurred and were proper. Second as to jury instructions, we note that at one point the trial judge stated that transvestites, and homosexuals and sex deviants as well, were a problem "area" for the community Viewed in context, however, it is clear that by this statement the judge was submitting to the jury the issue of whether appellant's presence in or quite close to the ladies' room constituted disorderly conduct. He was informing the jury that it was up to them to make this decision and discussing generally the fact that mores and manners with regard to sex and sex roles have changed a good deal in recent years. The remark to which objection is made was a single sentence in jury instructions that took well over one half hour to complete, and in our judgment, standing alone, fails to establish bias on the part of the trial judge against transvestites as a class or against appellant as an individual.

■ Finally, appellant objects to remarks made during a bench conference, namely, the trial judge's reference to a case where the court had stated that "Nobody would believe that son of a bitch on a stack of Bibles," and his later comments to counsel that he could see why appellant was "a headache to the store" and that the value of the case was minimal. While we do not condone or encourage such remarks by a trial judge, when the statements are made at the bench outside the presence of the jury, they do not, without more, disqualify a judge from sitting. Cf. Blackmone v. United States, D.C.Mun.App., 151 A.2d

---

5. Under the recusation statute the focus of the inquiry is on the sufficiency of the affidavit alleging bias, whereas here we are concerned with (1) the actual existence of bias and (2) the effect of such bias, if it existed, on the fairness of appellant's trial.

6. See also Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Blackmone v. United States, D.C.Mun.App., 151 A.2d 191, 197 (1959); but compare Eisler v. United States, 83 U.S.App.D.C. 315, 320, 170 F.2d 273, 278 (1948), cert. dismissed, 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (1949).

191, 197 (1959), where this court held that an opinion as to the guilt of an accused voiced out of the presence of the jury did not impinge upon the impartiality of the trial.[7]

We have examined the record thoroughly to determine whether bias is discernible from the proceedings as a whole which resulted in the trial judge's inability to conduct the trial fairly. As a result we are convinced that appellant was allowed to fully present his case and, except for the item of punitive damages, to submit his complaints to the jury. Motions for directed verdicts at the close of appellant's case and the close of all the evidence were denied, and the ultimate verdict was in appellant's favor. Thus we are unable to hold that the conduct of appellant's trial was anything less than impartial.

For the foregoing reasons, the judgment on appeal is

Affirmed.

7. *Accord.* United States v. Hanrahan, 248 F.Supp. 471, 476–77 (D.D.C.), aff'd, 121 U.S. App.D.C. 134, 348 F.2d 363 (1965); *and see* Tynan v. United States, *supra.*