FRANKLIN INVESTMENT CO., INC., Appellant,

v.

Vernon Lee SMITH, Appellee.

No. 11572.

District of Columbia Court of Appeals.

Argued Sept. 20, 1977.

Decided Feb. 24, 1978.

Rehearing and Rehearing en Banc Denied April 24, 1978.

Bernard D. Lipton, Silver Spring, Md., for appellant.

Paris A. Artis, Washington, D.C., for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

Franklin Investment Co., Inc. (Franklin) appeals from a judgment entered upon a jury verdict awarding compensatory and punitive damages of $5,000 to appellee Vernon L. Smith. Franklin asserts that the trial court erred in its denial of Franklin's motions for judgment n. o. v. and for a new trial.

This case involved the repossession and sale, by Franklin, of an automobile purchased by Smith from G. B. Enterprises (also a defendant at trial) under an installment contract assigned to Franklin, whereby the creditor retained a security interest in the vehicle. It is undisputed that, if Smith were in default, Franklin was authorized to repossess. Smith, however, alleged that he was not in default when the automobile was repossessed and that, therefore, Franklin was liable to him for damages. Smith further alleged that Franklin failed

to give him reasonable notice of the sale of the automobile as required by law[1] and that Franklin was liable to him for that failure. The jury returned a special verdict awarding Smith $2,000 for wrongful repossession, $1,000 for wrongful sale, and $2,000 as punitive damages, all against Franklin. (Defendant G. B. Enterprises was found not liable on all claims, presented on the theory that it had acted in concert with Franklin.)

I. Wrongful Repossession

Franklin's liability for wrongful repossession must rest in Smith's proof that he was current in his contractual payments. (Compliance with other terms of the conditional sales contract is not disputed on appeal; nor was the contract itself asserted to be void. *See Vines v. Hodges*, 422 F.Supp. 1292 (D.D.C.1976).) Smith testified that he was current in those payments when Franklin repossessed the automobile. Franklin introduced testimonial and documentary evidence that at least one payment had not been made. Smith was then permitted to reopen his case and to introduce, over objection, a checkbook stub which purported to show that Smith had made the disputed payment. The checkbook stub recites a date of March 9, 1973, and an amount of $139 to the order of Franklin Investment. There is an additional notation of "Replaced 3–16–71 with cash Deposit." The stub was removed from what was apparently a spiral-bound book containing stubs for previously-written checks, and there was no entry on the stub indicating "balance forward." Smith testified that the stub was a part of the ledgers of "Cragers Associates," a firm in which Smith and one Heath were partners. He further testified that Heath delivered the check represented by the stub to Franklin. Smith's counsel specifically eschewed proffer of the stub on the theory that it was a business record, and no attempt was made to so qualify it. Rather, the stub was proffered and accepted, over objection, as demonstrative evidence.

██ As demonstrative evidence, the checkbook stub demonstrates neither that a

---

1. *See* D.C.Code 1973, § 28:9–504(3) (reasonable notification to debtor); *id.* § 40–902(e)(1)(vi), and 5AA D.C. Register § 5.2 (written notifica-
tion within five days after repossession and at least 15 days before sale).

check was written nor that it was delivered; it merely demonstrates that the stub was completed. In order to demonstrate that the check was written, the stub would first have to qualify as a business record of the transaction, Super.Ct.Civ.R. 43–I, or come within some other exception to the rule against hearsay. *See Laas v. Scott,* 26 App. D.C. 354 (1905); *Nall v. Brennan,* 324 Mo. 565, 23 S.W.2d 1053, 1057 (1930); *Shea v. McKeon,* 264 App.Div. 573, 35 N.Y.S.2d 962 (1942). *Cf. Sabatino v. Curtiss National Bank,* 415 F.2d 632 (5th Cir. 1969) (qualification of checkbook stub under the now-repealed Federal Business Records Act, 28 U.S.C. § 1732 (1970)); Fed.Rule of Evidence 803(6), (7). Since neither of these was shown, this case is similar to *Nall v. Brennan, supra,* in which "the checkstubs . . . were not shown to have been kept in the regular course of business" and did "not show intelligibly and with reasonable definiteness the facts sought to be established by them." 23 S.W.2d at 1057. Admission of the stub in this case, therefore, was error. And where, as here, the material fact sought to be established by the erroneously admitted evidence was the subject of direct evidentiary conflict, there must be a new trial. *Moore v. Langdon,* 2 Mackey 127, 47 Am.Rep. 262 (D.C.Sup.1882); *Lipman Bros. v. Hartford Accident & Indemnity Co.,* 149 Me. 199, 100 A.2d 246, 254–55 (1953).

## II. Wrongful Sale

■ The jury also returned a verdict of $1,000 for the wrongful sale of Smith's automobile by Franklin. Franklin does not, on appeal, contest the sufficiency of the evidence to support the jury's conclusion that Smith was not afforded statutory notice prior to the sale. It does, however, contest the introduction of the checkbook stub as bearing upon this verdict. One element of Smith's damages was his equity in the automobile. The improperly admitted evidence tended to prove that Smith's debt was less than alleged by Franklin and that, therefore, Smith's equity was greater. The introduction of this evidence did not, however, prejudice Franklin with respect to the wrongful sale verdict. Excluding all evidence with respect to the payment assertedly demonstrated by the checkbook stub, Smith's evidence tended to show that he had made twenty-nine of the thirty-six payments of $139.41—that, in other words, $975.87 was unpaid. As Smith's counsel properly argued to the jury, Smith—whether in default or not—was entitled by reason of the wrongful sale to his equity in the automobile, *i. e.,* its value less any debt owed upon it. D.C.Code 1973, § 28:9–507(1). *See Neumeyer v. Union Bank,* 43 Cal.App.3d 873, 118 Cal.Rptr. 116 (1974); *Farmers State Bank v. Otten,* 87 S.D. 161, 204 N.W.2d 178 (1973). The difference ($1,024.13) between the value of the automobile (testified by Smith to be $2,000) [2] and the value of seven payments ($975.87) fully supports the verdict of $1,000 for wrongful sale even if we assume that the full amount of each payment represented principal.[3]

2. An owner of a chattel is generally competent to testify to its value. *Vaughan v. Spurgeon,* D.C.App., 308 A.2d 236 (1973); *Shea v. Fridley,* D.C.Mun.App., 123 A.2d 358 (1956); *Glennon v. Travelers Indemnity Co.,* D.C.Mun.App., 91 A.2d 210 (1952); *Brooks Transp. Co. v. McCutcheon,* 80 U.S.App.D.C. 406, 154 F.2d 841 (1946).

3. Smith argues, for the first time on appeal, that he was entitled to a verdict of $1,788.76 instead of $1,000. His argument is based upon his assertion that he is entitled to an additional $788.76 under D.C.Code 1973, § 28:9–507(1), which provides in part:

> If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

The record does not, however, reflect that this theory was ever advanced in the trial court. Nor was there any evidence that the automobile was a consumer good. The only evidence of the use of the automobile was Smith's testimony that he used it for business purposes and to drive his children to school. *See* D.C.Code 1973, § 28:9–109(1) (goods are consumer goods "if they are used or bought for use *primarily* for personal, family or household purposes"

■ Franklin further argues that the verdict for wrongful sale cannot stand in conjunction with a verdict for wrongful repossession. In this case, we agree. The verdicts under each count were necessarily based upon the same evidence of damage, the value of Smith's equity in the automobile.[4] We need not consider, therefore, whether, in another case, liability for wrongful repossession might produce damages different from those for liability for wrongful sale with the result that the damages proved under each count would be complimentary rather than duplicative. It is elementary that damages for the same injury may be recovered only once, even though recoverable under two theories or for two wrongs, for a plaintiff is not entitled to be made more than whole unless punitive damages are warranted. *Morrissette v. Boiseau*, D.C.Mun.App., 91 A.2d 130, 131–32 (1952). *See Robie v. Ofgant*, 306 F.2d 656, 660 (1st Cir. 1962); *Bartholomew v. Universe Tankships, Inc.*, 279 F.2d 911, 913 (2d Cir. 1960); *Muise v. Abbott*, 60 F.Supp. 561, 562 (D.Mass.1945), *aff'd*, 160 F.2d 590 (1st Cir. 1947) ("In the absence of circumstances warranting the allowance of exemplary damages, the court will not allow a plaintiff to recover more than one satisfaction in damages—enough to put him in status quo."); *Burke v. Burnham*, 97 N.H. 203, 84 A.2d 918, 922 (1951); *Industrial Supply Co. v. Goen*, 58 N.M. 738, 276 P.2d 509, 513 (1954). Recovery of the equity for wrongful sale necessarily assumes that the same equity has not already been recovered under another count.

In this case we have held that there must be a new trial as to the wrongful repossession count. The verdict for wrongful repossession, therefore, does not now stand in duplication of the verdict for wrongful sale, and the latter verdict must be approved. Since, however, on retrial Smith might obtain a verdict on the wrongful repossession count, and since such a verdict would be inconsistent with the verdict now approved, Smith must, on remand, elect whether to accept the verdict on the wrongful sale count as his entire recovery or to retry both counts—bearing in mind that he can recover his equity only once.

### III. Punitive Damages

■ The jury awarded $2,000 as punitive damages but did not specify upon which of the two counts the award was predicated. Because we reverse the judgment as to wrongful repossession for error in the assessment of liability, there is no basis for an award of punitive damages upon that count. For punitive damages may not be awarded where there is no basis for an award of compensatory damages. *See Wardman-Justice Motors, Inc. v. Petrie*, 59 App.D.C. 262, 266, 39 F.2d 512, 516 (1930). Because, however, there may be a new trial with respect to both counts, and because the punitive damages could have been predicated upon the wrongful sale count, we now consider the sufficiency of the evidence to support punitive damages on either count.

■ Punitive damages may properly be awarded

"where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." [*Franklin Investment Co. v. Homburg*, D.C.App., 252 A.2d 95, 98 (1969), *quoting McClung-Logan Equipment Co. v. Thomas*, 226 Md. 136, 172 A.2d 494, 500 (1961).]

When the defendant is a corporation, it must also appear that the act was authoriz-

(emphasis added)). Smith did not, moreover, file a cross-appeal in this case. We need not, therefore, consider whether this recovery provision could have been applied to this case.

4. Smith introduced evidence that certain personal property was in the car when repossessed and that this property was not returned. Since, however, loss of this property was not pleaded, and no value was ever ascribed to it, we must assume that the jury considered this evidence as relevant to punitive damages only. *See* Part III, *infra*. Smith also testified that he used the car for business purposes, but did not testify to any business loss as a result of the repossession or sale.

ed or ratified by the corporation rather than merely by an employee of the corporation. *Wright v. Crown Co.,* D.C.App., 267 A.2d 347, 350 (1970). Proof of each of these elements need not be by direct evidence, but may appear from all the facts and circumstances of the case. *See Franklin Investment Co. v. Homburg, supra* at 98 (circumstantial evidence of intent); *May Department Stores Co., Inc. v. Devercelli,* D.C.App., 314 A.2d 767, 770 (1973), and *General Motors Acceptance Corp. v. Froelich,* 106 U.S.App.D.C. 357, 273 F.2d 92 (1959) (circumstantial evidence of corporate action).

■ Franklin asserts that there was insufficient evidence of malice to support the jury verdict. With respect to the wrongful repossession count, the evidence tended to show that Smith was not in default when the automobile was repossessed and that the manager of Smith's account was not aware of any default at that time. With respect to the wrongful sale count, the evidence tended to show that Franklin did not send notice of the impending sale to Smith and that Franklin's records contained Smith's then-current address. Upon this evidence alone, there is no basis for the finding of malice. There is no evidence that Franklin repossessed Smith's automobile with full knowledge that there had been no default or in reckless disregard of reasonable procedures for determining whether there had been a default. *Cf. General Motors Acceptance Corp. v. Froelich, supra* (repossession based upon mere rumor). Nor is there evidence that Franklin had willfully disregarded actual notice of Smith's correct address when it failed to give lawful notice of the impending sale.

The jury, however, was entitled to consider Franklin's past and contemporaneous dealings with Smith as evidence of malice. *Boyd v. Johnston,* D.C.Mun.App., 52 A.2d 497 (1947). Smith's evidence tended to show four such instances. First, Smith testified that Franklin had repossessed his automobile within one month of the date of purchase by Smith. The basis for this repossession was Franklin's assertion that Smith did not have collision insurance as required by the security agreement. The security agreement recites, however, that Smith did have insurance, and it does not appear that Franklin made any attempt to verify its belief that Smith was without insurance prior to repossession. Smith testified that he did, in fact, have such insurance and that he reobtained possession of the automobile upon proof of that fact. The second and third incidents involved Smith's attempts to trade his automobile to another dealer. On both occasions, Smith testified, Franklin represented to the dealers that the balance of Smith's account was greater than the actual balance, thus preventing him from obtaining favorable terms on the trade. Finally, Smith testified that the automobile, when repossessed, contained certain personal property upon which Franklin had no lien. Franklin's response to Smith's attempt to recover this property. was the suggestion of one of Franklin's officers that Smith sue him.

Each of these circumstances was relevant to the issue of malice. In *General Motors Acceptance Corp. v. Froelich, supra,* the court held that a total failure of the finance company to verify information upon which it based its repossession was sufficient evidence to sustain punitive damages, a situation not unlike the prior repossession in this case. The refusal of Franklin to return Smith's personal property on demand is likewise indicative of a willful disregard for Smith's rights. And the misrepresentation of Smith's account balance on two occasions, while there is no indication of willfulness, is evidence the jury could well consider in finding that Franklin's conduct of its affairs was so grossly negligent as to evidence wantonness. We cannot say that this record, read in its entirety and in the light most favorable to Smith, lacks evidence of malice to support the jury verdict.

■ Franklin asserts, however, that this malice cannot be imputed to the corporation since there was no showing that either the repossession or sale was approved by it or ratified with full knowledge of the facts. With respect to the sale, Franklin's own

evidence showed that one of its officers approved the impending sale. On the day the automobile was repossessed, an officer signed a statement (which was to have been sent to Smith) that the automobile would be sold at auction. This was sufficient approval. As in *Wardman-Justice Motors, Inc. v. Petrie, supra*, prior approval of a wrongful act need not be accompanied by knowledge or notice that the act is wrongful.

▮ With respect to the repossession, there was no direct evidence of prior approval. Corporate approval of an action, however, may be shown by circumstantial evidence. "It is not essential in every case that an executive officer of high rank actively participate in corporate conduct, as in *Wardman-Justice.*" *General Motors Acceptance Corp. v. Froelich, supra*, 106 U.S. App.D.C. at 359, 273 F.2d at 94. *See also Jackson v. General Motors Acceptance Corp.*, D.C.Mun.App., 140 A.2d 699, 700–01 (1958). Here, there was evidence from which the jury could find that repossessions were part of Franklin's ordinary course of business. *See General Motors Acceptance Corp. v. Froelich, supra*, 106 U.S.App.D.C. at 359, 273 F.2d at 94. The instant case, therefore, is unlike either *Woodard v. City Stores Co.*, D.C.App., 334 A.2d 189, 191 (1975), where the "only evidence [of corporate action] went to ratification," or *Washington Garage Co. v. Klare*, D.C.App., 248 A.2d 681 (1968), where there was no evidence that the act of an employee (delivery of a bailed automobile without receipt of the claim check), while not of itself wrongful, was in the usual course of the company's business. Rather, the jury could here, as in *May Department Stores Co., Inc. v. Devercelli, supra* (where store officials refused to apologize for their wrongful conduct), properly consider all the evidence before it (including the suggestion of Franklin's officer that Smith sue him) as indicative of corporate policy rather than individual whim.

**5.** Franklin has raised other claims of error which have been thoroughly reviewed and

## IV. Conclusion

For the foregoing reasons,[5] the judgment entered in this case is vacated and the cause remanded. On remand, the trial court shall permit appellee to elect either to have judgment in the amount of $3,000 (compensatory damages of $1,000 and punitive damages of $2,000) or a new trial.

*So ordered.*

found to be without merit or, in view of our disposition, moot.